1  ANDREW KIM, ESQ. (SBN 147015)
   LAW OFFICES OF ANDREW KIM, APC
2  3470 Wilshire Blvd., Suite 885
   Los Angeles, Calif. 90010
3  Tel: 213-386-4497
   Fax: 213-380-0084
4  E-MAIL: andrewkkimlawyer@gmail.com

5  Attorney for Plaintiff, CLK Global Co., Ltd,
   a South Korean Business Consulting Company

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLK Global Co., Ltd., a South Korean Business Consulting Company,<br><br>Plaintiff,<br><br>vs.<br><br>Nephron Pharmaceuticals Corporation, a South Carolina Corporation, Nephron SC, Inc., a South Carolina Corporation, STSC Clinical, Inc., a Georgia Corporation, and Does 1 to 50, inclusive,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1) **BREACH OF WRITTEN CONTRACT**<br>2) **FRAUD AND MISREPRESENTATION**<br>3) **CONSPIRACY TO COMMIT FRAUD**<br>4) **BREACH OF IMPLIED CONVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**JURY DEMANDED** |

PLAINTIFF, CLK Global Co., Ltd., a South Korean Business Consulting Company, alleges,

1) Plaintiff, CLK Global Co., Ltd., a South Korean Business Consulting Company, is a South Korea based privately held business administration, management and factory consulting company.

2) Defendants, Nephron Pharmaceuticals Corporation, a South Carolina Corporation, and Nephron SC, Inc., a South Carolina Corporation, (collectively referred to as "NEPHRON" hereinafter) are each, a global leader in manufacturing generic respiratory medications and they are located in the City of West Columbia, South Carolina, U.S.A.

1

COMPLAINT FOR DAMAGES

3) Defendant, STSC Clinical, Inc., a Georgia Corporation, is a privately held United States Government Services Company, USA FDA initial importer, re-packager/re-labeler, specification developer and complaint file establishment located in Duluth, Georgia, U.S.A.

4) DOES 1-50 are persons or entities that are unknown to plaintiff. Their capacities are unknown. Plaintiff alleges that they are in some way involved in the actions complained of herein as either independent actors or as agents or principals of the other named defendants. Plaintiff will amend this complaint to allege their true identities, capacities and roles when they are ascertained.

5) On information and belief, at all times herein mentioned herein, defendants and Does 1 through 50, inclusive were acting as the agents and/or employees of each remaining defendant, and acting within the course and scope of said agency and/or employment, and that each fictitiously named defendant is responsible in some manner for the occurrences herein alleged and that plaintiffs' damages as herein alleged were approximately caused by such defendants and each of them.

## BACKGROUND INFORMATION

6) Since the beginning of 2021, defendant, NEPHRON, a leader in manufacturing generic respiratory medications, including but not limited to, developing and producing safe, affordable generic inhalation solutions and suspension products, prefilled sterile syringes and IV bags, was pursuing the development of a medical-grade nitrile glove (hereinafter referred to as "Nephron Glove") manufacturing facility to be located close to their existing manufacturing facility in the City of West Columbia, South Carolina, U.S.A., which facility will be operated by a company to be formed and affiliated with NEPHRON.

7) While pursuing the development of above Nephron Glove, defendant NEPHRON, engaged both defendant STSC and plaintiff CLK in order to achieve the objective of developing and

COMPLAINT FOR DAMAGES

producing the Nephron Gloves by October 1, 2021. In the process, in or about Feb. 2021, the foregoing parties entered into a written agreement entitled "AGREEMENT WITH CLK" detailing the terms and conditions of each contracting party. A copy of the foregoing Feb. 2021 written contract is attached hereto as Exhibit 1.

## FIRST CAUSE OF ACTION
## (BREACH OF CONTRACT)

8) Plaintiff incorporates herein and realleges paragraph 1 through 7 as though fully set forth herein.

9) Per above written agreement, plaintiff was fully performing in accordance with the terms and conditions that are laid out in the agreement as detailed under the subheading, Deliverables in Paragraph 1, including but not limited to, submitting the Operating Plan within thirty (30) days of the effective date of the written agreement. Furthermore, plaintiff was able and willing to work together with defendants in coming up with the Definitive Agreement which is a collective term for the Operating Plan, the Equipment Agreement, Raw Materials Agreement and Technology License Agreement in a timely manner.

10) Despite plaintiff performing as agreed, defendants, and each of them, breached the contract by refusing to honor the terms and conditions of the Agreement.

11) Even though plaintiffs repeatedly demanded the performance, including but not limited to, the continued collaboration and payments as agreed, to this date, defendants and each of them failed to perform as agreed.

12) Due to above breach of contract, plaintiff has been damaged in the sum of two million dollars ($2,000,000.00) and interest since Sept. 2021.

COMPLAINT FOR DAMAGES

## SECOND CAUSE OF ACTION

## (FRAUD)

13) Plaintiff incorporates herein and reallege paragraph 1 through 12 as though fully set forth herein.

14) While performing as agreed, plaintiff actively coordinated with defendants herein to ensure supply of raw materials through series of meetings with LG Chem, Kumho Petrochemical and DB Inc. While performing as agreed, plaintiff relied on the terms and conditions of the Agreement. It was reasonable for plaintiff to rely as defendants repeatedly assured plaintiff of their intention to fully abide by the terms and conditions of the Agreement.

15) However, it was learned later that defendant, STSC tried to sidestep or exclude plaintiff of its' role in relation to the Agreement with defendants herein. Among such acts in violation of the Agreement by defendants are arranging the meeting by STSC of its close business associate, President of Hayanson Co ("Hayanson") with defendant, Nephron, and having Hayanson to submit a facility-related estimate in around April 2021, ordering Shinhwa Tech, a Korean company to exclude plaintiff and requesting LG Chem's nitrile and signing a production machine purchase contract with Malaysian ATST without knowledge and consent of plaintiff.

16) All of above acts were concealed to plaintiff and plaintiff, until sometime later, was ignorant of the concealment and believed that defendants are abiding by the terms and conditions of the Agreement. Plaintiff continued to performed as agreed until it became aware of above mentioned acts of violation. Had plaintiff known the actual facts, it would not have entered into the Agreement and incurred the costs and expenses in performing as agreed.

17) As a proximate result of aforementioned conduct of defendants, plaintiff was damaged in the sum of two million dollars.

4

COMPLAINT FOR DAMAGES

18) The aforementioned conduct of defendants were an intentional misrepresentation, deceit, or concealment of a material fact known to the defendants with the intention on the part of the defendants of thereby depriving plaintiff of property or legal rights or otherwise causing injury and damage, and was despicable conduct that subjected plaintiff to a cruel and unjust hardship in conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive damages.

## THIRD CAUSE OF ACTION
## (CONSPIRACY TO COMMIT FRAUD)

19) Plaintiff incorporates herein and realleges paragraph 1 through 18 as though fully set forth herein.

20) In doing the acts hereinabove alleged, defendants and each of them conspired to commit the above alleged fraud against plaintiff and did take the steps toward committing the fraud, including but not limited to, defendants going around plaintiff to deal directly with others in violation of the Agreement.

21) As a proximate result of defendants' conspiracy to commit fraud and deceit as hereinabove alleged, plaintiff was damaged in the amount of two million dollars ($2,000,000.00).

22) The aforementioned conduct of defendants were malicious, oppressive and intentional with the intention on the part of the defendants of thereby depriving plaintiff of property or legal rights or otherwise causing injury and damage, and was despicable conduct that subjected plaintiffs to a cruel and unjust hardship in conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive damages.

COMPLAINT FOR DAMAGES

# FOURTH CAUSE OF ACTION
## (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

23) Plaintiff incorporates herein and realleges paragraph 1 through 22 as though fully set forth herein.

24) In doing the acts hereinabove alleged, defendants and each of them breached the implied covenant of good faith and fair dealing against plaintiff herein.

25) Due to above breach of implied covenant, plaintiff has been damaged in the sum of two million dollars ($2,000,000.00).

THEREFORE, PLAINTIFF herein prays damages against defendants and each of them as follows.

**FOR THE FIRST AND FOURTH CAUSES OF ACTION**

1) For damages in the amount of two million dollars ($2,000,000.00)

**FOR THE SECOND AND THIRD CAUSES OF ACTION**

2) For damages in the amount of two million dollars ($2,000,000.00)
3) For punitive damages in the amount of ten million dollars ($10,000,000.00)

**FOR ALL CAUSES OF ACTION**

4) Interests and Costs
5) For such other damages as the court deems appropriate in the interest of justice.

6

COMPLAINT FOR DAMAGES

Dated: Dec. 20, 2022

LAW OFFICES OF ANDREW KIM, APC

ANDREW KIM, Attorney for Plaintiff,
CLK Global Co., Ltd, a South Korean Business Consulting Company

**JURY TRIAL DEMANDED**

Please be advised that plaintiff, CLK Global Co., Ltd., a South Korean Business Consulting Company, hereby demands the jury trial in this case.

**Dated: 12/27/2022**

LAW OFFICES OF ANDREW KIM, APC

ANDREW KIM, Attorney for Plaintiff,
CLK Global Co., Ltd, a South Korean Business Consulting Company

7

COMPLAINT FOR DAMAGES

# EXHIBIT

## AGREEMENT WITH CLK

This Agreement ("Agreement") is made this ___ day of February 2021 (the "Effective Date"), by and among Nephron Pharmaceuticals Corporation ("NPC"), Nephron SC, Inc. ("NSC") (NPC and NSC collectively, "Nephron"), STSC Clinical, Inc. ("STSC"), and CLK Global Corporation LTD ("CLK") (each a "Party," and, collectively, the "Parties").

WHEREAS, Nephron is a global leader in manufacturing generic respiratory medications, and is located in West Columbia, South Carolina, USA;

WHEREAS, among other things, Nephron develops and produces safe, affordable, generic inhalation solutions and suspension products, prefilled sterile syringes and IV bags in volumes totaling over one billion doses of life-saving medication in each of the last 10 years;

WHEREAS, Nephron is pursuing the development of a medical-grade nitrile glove manufacturing facility to be located in proximity to their existing manufacturing facility in West Columbia, South Carolina, USA; which facility will be operated by a company (to be formed) affiliated with Nephron ("Nephron Glove");

WHEREAS, STSC is a privately-held United States Government Services Company, USA FDA Initial Importer, Repackager/Relabeler, Specification Developer; Complaint File Establishment, located in Duluth, Georgia, USA;

WHEREAS, CLK is a privately-owned South Korean Business Administration, Management and Factory Consulting Company and an STSC affiliate located in Seoul, Republic of Korea;

WHEREAS, the objective of this Agreement is to memorialize the roles, responsibilities, and deliverables of the Parties in support of Nephron's endeavor to commence operations of Nephron Glove by October 1, 2021.

1

NOW, THEREFORE, in consideration of the mutual promises, terms, provisions and conditions contained in this Agreement, the Parties agree as follows:

1. Deliverables
    1.1. Nephron hereby engages STSC to act as a consultant to lead a working group, inclusive of CLK, to assist Nephron with the development of (i) the Nephron Glove manufacturing facility and, (ii) the development of critically important relationships and agreements with international suppliers of raw materials, technology and equipment.
    1.2. Within thirty (30) days from the Effective Date, STSC and CLK will present an Operating Plan ("The Plan"). The Plan will address the facilities, equipment, supply chain, labor, and production processes required to commence operations of Nephron Glove by October 1, 2021.
    1.3. Within forty-five (45) days from the Effective Date, STSC and CLK will coordinate all international communications and facilitate the evaluation, drafting, and negotiation of proposed Letters of Intent ("LOIs") for (i) the purchase and installation of the most reliable and efficient manufacturing equipment (the "Equipment Agreement"); (ii) raw material supplier agreements (the "Raw Materials Agreement"); and (iii) an exclusive technology ("Technology License Agreement") licensing agreement.
    1.4. Within ten (10) business days of receipt of same, Nephron will review the draft LOIs and, if the terms are acceptable to Nephron, will authorize the development of definitive agreements for the Equipment Agreement, Raw Materials Agreement and Technology License Agreement (collectively the "Definitive Agreements").
    1.5. Each Party will appoint an appropriate person(s) to represent its organization and to coordinate the evaluation and implementation of agreed upon activities. In order to carry out and fulfill the aims of this Agreement, all Parties will communicate regularly (preferably with two days advance notice) to discuss progress and plan activities.

2. Compensation
    2.1. Compensation Schedule shown on Addendum A.
    2.2. Due Diligence Direct Expenses: Upon the successful execution of all Definitive Agreements require to commence operations of Nephron Glove, Nephron will reimburse the reasonable out-of-pocket direct expenses incurred by STSC and CLK involved with conducting the due diligence associated with this agreement (e.g., transportation, lodging,

etc.) less any expenses to be paid by STSC or their Subcontractors as agreed to by the parties. STSC and CLK will provide Nephron a written budget for all such direct expenses, will update and revise same periodically as necessary, and will not incur expenses in excess of $2,500 per item in advance without Nephron's approval. The direct expenses required to complete due diligence will not exceed $50,000USD and will be reimbursed within 5 business days following the execution of all Definitive Agreements.

2.3. The Parties agree that they will endeavor in good faith to amend and supplement this Agreement from time to time as required to ensure the successful and timely commencement of operations of Nephron Glove. These amendments/supplements could include, but are not limited to, specific technical and financial support activities required by the Parties to ensure Nephron Glove commences operations by October 1, 2021, and on budget.

3. Term and Termination

   3.1. Term. This Agreement is effective on the Effective Date and will continue for a period of one year ("Initial Term"), unless sooner terminated as provided in this Agreement; provided, however, the Parties will have the option to extend the Agreement for additional terms (each, "Renewal Term") with mutual agreement.

   3.2. Termination. Either Party may terminate this Agreement as set forth in this subsection and shall specify what agreement(s) are being terminated in the required notice.

      3.2.1. By Mutual Consent. This Agreement may be terminated upon mutual agreement of the Parties at any time.

      3.2.2. Without Cause. This Agreement may be terminated by either Party upon thirty (30) days written notice.

      3.2.3. For Cause. This Agreement may be terminated with immediate effect by any Party in the event of a material breach by the other Party.

4. Independent Contractors. None of the provisions of this Agreement are intended to create and shall not be deemed or construed to create any relationship between the Parties other than that of independent contractors. Nephron, on the one hand, and STSC and CLK, on the other, are independent entities contracting with each other hereunder solely for the purpose of effectuating the provisions of this Agreement. With the exception of the terms outlined herein, this Agreement is not intended, and shall not be construed, to create a venture, partnership,

3

association, trustee-beneficiary relationship, principal-agent relationship, or fiduciary relationship between the Parties.

5. <u>Confidential Information.</u> "Confidential Information" means all proprietary and confidential business and other information, in whatever form provided, shared between the Parties in connection with the Agreement, including, without limitation, records and materials prepared or maintained by or on behalf of any Party (including, without limitation, by employees, contractors or other agents). Each party agrees that it shall not, at any time after executing the activities of this Agreement, disclose any information in relation to these activities or the affairs of business or method of carrying on the business of the other without consent of both parties.

6. <u>Assignment.</u> Nephron may assign or delegate any rights, duties, or obligations under this Agreement, in whole or in part, without the prior written consent of the Parties. The terms, covenants and conditions contained herein shall be binding upon and shall inure to the benefit of the successors and permitted assigns of the Parties hereto.

7. <u>General.</u>

    7.1. <u>Cooperation.</u> Each Party agrees to cooperate with the other Parties to carry out the purpose and intent of this Agreement.

    7.2. <u>Entire Agreement.</u> This Agreement constitutes the entire agreement between the Parties and supersedes all prior and contemporaneous communications, agreements, and understandings, written or oral, with respect to the terms and conditions of this Agreement.

    7.3. <u>Change of Law.</u> Upon a Party's good faith determination on the basis of events occurring subsequent to the date of this Agreement, that the Agreement fails to comply in a material way with any provision of federal, state, or local law, and after notice thereof has been given by that Party to the other, the Parties shall promptly meet within a period of thirty (30) days after notice is received and using all good faith and due diligence shall attempt to agree upon a new structure that will satisfy the business objectives of this Agreement and legal requirements. If, by the end of the thirty (30) day period, the Parties have agreed upon a new structure, then the Parties shall endeavor to amend this Agreement. If by the end of the thirty (30) day period, the Parties have failed to agree upon a new structure, then the Agreement shall automatically terminate.

    7.4. <u>Compliance with Law.</u> The Parties recognize that all activities of the Parties hereunder or in furtherance of the Agreement shall at all times be subject to, and in accordance with,

4

all applicable federal, state and local laws, rules, regulations, including, without limitation, those relating to the licensure and operation of a nitrile glove facility. In addition, it is the responsibility of STSC and CLK to ensure compliance with the United States Executive Orders and U.S laws that prohibit transactions with, and the provision of resources and support to, individuals and organizations associated with terrorism.

7.5. <u>Communications:</u> All notices, demands, and other communication under this Agreement in connection herewith shall be written in the English language and shall be sent to the last known address, e- mail, or fax of the concerned Party. Any notice shall be effective from the date on which it reaches the other Party. STSC and CLK shall immediately inform Nephron of any event, which could have a negative influence on or endanger the successful accomplishment of the tasks described in the agreement.

7.6. <u>Addendum:</u> Any Addendum to this Agreement shall be in writing and signed by appropriate Parties.

8. <u>Notices.</u> Any notices and other communications provided for by this Agreement shall be in writing and shall be effective when hand delivered or on the date received if mailed, postage pre-paid, certified mail (return receipt requested) at the following addresses:

**To Nephron at:**

    Lou Kennedy
    Chief Executive Officer
    Nephron Pharmaceutical Corporation
    4500 12th Street Extension
    West Columbia, South Carolina, USA 29172

**To STSC Clinical, Inc. at:**

    Dr. Rick Yi
    Principal Consultant
    STSC Clinical, Incorporated
    3500 Duluth Park Lane
    Building 420
    Duluth, Georgia USA 30096

**To CLK Global Co., Ltd at:**

    Sung Woo Kim
    President
    CLK Global Co., Ltd.
    #710, 45 Seocho-DaeRo 77-gil, Seocho-gu
    Seoul, Republic of Korea

[signature pages to follow]

6

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the ___ day of February 2021.

Nephron Pharmaceuticals Corporation

Signature: *Lou Kennedy* (DocuSigned by: AE8432D6F79F4C2...)

Name: Lou Kennedy

Title: Chief Executive Officer

Date: 3/2/2021


Nephron SC, Inc.

Signature: *Lou Kennedy* (DocuSigned by: AE8432D6F79F4C2...)

Name: Lou Kennedy

Title: Chief Executive Officer

Date: 3/2/2021


[Signature Page for Nephron Pharmaceuticals Corporation and Nephron SC, Inc.]

7

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the ___ day of February 2021.

STSC Clinical, Incorporated

Signature: *Dr. Rick Yi*
(DocuSigned by: 7E51D6765BCD4CC...)

Name: Dr. Rick Yi

Title: Principal Consultant

Date: 3/2/2021

[Signature Page for STSC Clinical, Incorporated]

8

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the ___ day of February 2021.

CLK Global Corporation, LTD

Signature: *SungWoo Kim* (DocuSigned by: EA4F800938B3465...)

Name: Sung Woo Kim

Title: President

Date: 3/3/2021

[Signature Page for CLK Global Corporation, LTD]

9

## ADDENDUM A – COMPENSATION SCHEDULE CLK

1. Upon the successful completion of each of the following two milestones, STSC will receive and distribute to CLK a one-time payment as follows:
    1.1. Five hundred thousand dollars ($500,000) to be paid within 5 business days from the execution of all Definitive Agreements related to raw material supplier agreements ("Raw Materials Agreement") and efficient manufacturing agreement ("Equipment Agreement")
    1.2. Five hundred thousand dollars ($500,000) to be paid within 5 business days following the successful installation of all required manufacturing equipment.
    1.3. Eight hundred thousand dollars ($800,000) to be paid within 30 days following the first shipment of gloves manufactured by Nephron Glove
2. Upon the commencement of Nephron Glove operations and the successful handoff to Nephron Glove personnel, STSC will distribute to CLK and other related parties, an ongoing Strategic Partner Fee ("Strategic Partner Fee") to ensure the contracts with the Technical and Intellectual Property and Raw Material/Supply Chain Agreements are secured and honored.
    2.1. It is anticipated that the Strategic Partner Fee for Supply Chain Maintenance to be negotiated for 2 years and is estimated at 1.5% of average monthly sales price, not to exceed $0.30 per box of 100 count - to maintain raw materials and to be further described in the Definitive Agreements.